# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION

## CRIMINAL NO. 2:06CR30

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| | ) | |
| **DANIAL A. FLOWERS** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on appeal by Defendant Danial A.

Flowers[1] from a bench trial held before Magistrate Judge Dennis L. Howell,

who found Defendant guilty of the offenses of public intoxication, in

violation of N.C. Gen. Stat. § 14-444(a); resisting, obstructing, or delaying

an officer, in violation of N.C. Gen. Stat. § 14-223; and using profane and

indecent language on a public highway, in violation of N.C. Gen. Stat. § 14-

197.

---

[1] It appears from Defendant's pleadings that the proper spelling of his
name is Daniel A. Flowers. Nonetheless, Defendant's violation notices and
judgment bear the name Danial A. Flowers.

# I.  STANDARD OF REVIEW

A defendant who is convicted and sentenced by a magistrate judge is not entitled to a trial *de novo* by a district court.  **Fed. R. Crim. P. 58(g)(2)(D).**  "The scope of appeal shall be the same as an appeal from a judgment of a district court to a court of appeals."  ***Id.***

> An appeal of an otherwise final sentence imposed by a United States magistrate judge may be taken to a judge of the district court and this section shall apply . . . as though the appeal were to a court of appeals from a sentence imposed by a district court.

**18 U.S.C. § 3742(h).**  "Accordingly, [a district court] should not reverse the decision of the Magistrate unless, after considering all of the evidence in the most favorable light to the government's case, this court finds that the Magistrate (or any rational trier of fact) could not conclude beyond a reasonable doubt that the defendant was guilty."  ***United States v. Fattaleh***, 746 F. Supp. 599, 601 (D. Md. 1990).

## II. FACTUAL AND PROCEDURAL HISTORY

The Government's evidence tended to show the following facts.  On June 10, 2006, at approximately 12:30 AM, Officers John Phillip Rickett[2] and John Lovin of the Tennessee Valley Authority police force were on patrol when they encountered a group of 12 to 15 individuals, including Defendant.  **Transcript of Proceedings, held August 29, 2006, at 9, 10, 30, 31.**  The group was assembled on State Road 1246 in Graham County, North Carolina, on a section of the road that runs through the Fontana Village Resorts in the Great Smoky Mountains National Park.  ***Id.* at 3, 10.** As they approached, the officers observed tables, beer coolers, debris, and a parked truck set in the middle of the road.  ***Id.* at 10, 32.**  Most of the individuals in the group appeared to be under the influence of alcohol.  ***Id.* at 10.** The officers sought out the driver of the truck, who was not Defendant, and began "trying to form an opinion if [he] was impaired, if he was able to drive to move the vehicle out of the way." ***Id.* at 32.**

---

[2] The proper spelling of Officer Rickett's name is also unclear.  On Defendant's violation notices, the officer wrote his name as "Rickett JP." The trial transcript, however, lists his last name as "Ricketts." **Compare Exhibits 2-4, *attached to* Notice of Appeal, filed September 13, 2006, *with* Transcript of Proceedings, *supra*, at 9.**

At this point, Defendant approached the officers and began "hollering profanity." ***Id.* at 32.** The officers' accounts differed as to Defendant's precise choice of words, but Officer Lovin testified that he called him "a f\*\*\* dickhead." **Exhibits 3 and 4, *attached to* Government's Response Brief, filed February 5, 2007.**[3] Officer Rickett added that Defendant's words appeared calculated to "incite the others." **Transcript, *supra*, at 12.** The officers asked Defendant to get off the road, and after repeated requests, Defendant eventually complied. ***Id.* at 11-12.**

Once they had ascertained that the driver of the truck was impaired, the officers offered to move the parked truck out of the road themselves. ***Id.* at 15.** At this point, Defendant again approached and started shouting profanity at the officers. ***Id.*** Both officers testified that this time Defendant stated they were "f\*\*\*ing a\*\* holes." **Exhibits 3 and 4, *supra*.**

The officers observed that Defendant had a strong odor of alcohol on his person, as well as redness in his eyes and overall "unsteadiness" in carrying himself. **Transcript, *supra*, at 35.** Officer Lovin also stated that "he was very obnoxious and I thought probably talked too much for

---

[3] The officers were directed by the Magistrate Judge to write down the alleged profanity, instead of repeating the words orally in the courtroom. **Transcript, *supra*, at 12-13, 30-31.**

somebody that wasn't impaired . . . .  He was very combative in his language and his demeanor towards us." *Id.* **at 35.**

Eventually, "for officer safety reasons," the officers separated Defendant from the rest of the crowd and issued him a citation for drunk and disorderly conduct.  *Id.*  Officer Rickett testified that "we took him out of the situation because we felt like he was trying to encourage the others to be uncooperative, and they were actually trying to help us out." *Id.* **at 17.**  Once he was away from the crowd, Officer Rickett stated that Defendant "just [ ]relentlessly kept on badgering us . . . . [j]ust making insulting comments, you know, that we probably didn't even have a high school education and if we needed help with writing the citation that he'd be glad to help us out, that he had a degree, and things like that." *Id.* **at 16.**  Defendant also initially refused to give his name, address, and other information that would enable the officers to issue the citation, although he later relented when another partygoer intervened and convinced him to cooperate.  *Id.* **at 15.**  After 30 to 40 minutes, the officers finally subdued Defendant by handcuffing him and issuing two more citations for resisting, obstructing, or delaying an officer and using profanity on a public highway.

*Id.* **at 15, 16, 35.** They eventually released him into the custody of his friends. *Id.* **at 36.**

Defendant appeared *pro se* before the United States Magistrate Judge on August 29, 2006, to answer the citations. *Id.* **at 1.** After hearing the evidence, the Magistrate Judge convicted Defendant of the three offenses with which he was charged, imposing a fine for each. Defendant received no term of active imprisonment. *Id.* **at 53-54.** Defendant has appealed his convictions for drunk and disorderly conduct and for resisting, obstructing, or delaying an officer, on the basis of insufficient evidence. **Defendant's Brief, filed November 20, 2006, at 9.** He also challenges the constitutionality of N.C. Gen. Stat. § 14-197, the statute that prohibits profanity on a public highway. *Id.* **at 7.** The American Civil Liberties Union (ACLU) has filed an *amicus* brief in support of Defendant's constitutional challenge of the aforementioned statute. **Brief of ACLU, filed November 30, 2006.**

The Government offered to dismiss Defendant's conviction for profanity on a public highway. ***See* Government's Response Brief, filed February 5, 2007, at 8.** This Court offered the Defendant an opportunity to accept the Government's offer, but Defendant did not respond to the

Court's Order to that effect. *See* **Order, filed February 14, 2007.**

Therefore, the Court shall proceed with its review as if Defendant had

declined the Government's offer to dismiss. *See id.* **at 2 (stating that,**

**"[i]f no response is filed [by Defendant], the Court will proceed under**

**the assumption that Defendant does not concede to the dismissal of**

**his conviction under § 14-197.").**

Pursuant to 28 U.S.C. § 2403(b), the Court notified the State of North

Carolina of Defendant's constitutional challenge to N.C. Gen. Stat. § 14-

197 and allowed North Carolina to file a brief in response. **Order, filed**

**September 7, 2007.** North Carolina has since filed its brief in support of

N.C. Gen. Stat. § 14-197. **Brief of the State of North Carolina, filed**

**September 28, 2007.**

## III. DISCUSSION

### A. Timeliness of Defendant's Appeal

The Government first challenges Defendant's appeal on the basis

that his notice of appeal was untimely. The Federal Rules of Criminal

Procedure allow a defendant who is convicted by a magistrate judge of a

petty offense 10 days to appeal the conviction to a district judge.  **See Fed. R. Crim. P. 58(g)(2)(B).**  The Rules also specifically state that, in computing the time allowed for this appeal, a court must "[e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days."  **Fed. R. Crim. P. 45(a)(2).**

In the present case, Defendant's conviction and judgment were entered on August 30, 2006.  Because the Rules afforded Defendant less than 11 days to appeal the judgment entered against him, Rule 45(a)(2) requires this Court to exclude Saturdays, Sundays, and the Labor Day holiday when computing the deadline for Defendant's appeal to be filed. Therefore, the Court finds Defendant's appeal was due on or before September 14, 2006.  As Defendant's appeal was received by the Clerk's office on September 13, 2006, the Court finds Defendant's appeal was timely under the Federal Rules of Criminal Procedure.

## B.  Convictions Under N.C. Gen. Stat. §§ 14-223 and 14-444(a)

Defendant appeals his convictions for resisting, obstructing, or delaying an officer under N.C. Gen. Stat. § 14-223 and public intoxication

under N.C. Gen. Stat. § 14-444(a), claiming insufficient evidence.  As to §

14-223,

> the elements of obstruction or delay of an officer are as follows:
> 1) that the victim was a public officer; 2) that the defendant
> knew or had reasonable grounds to believe that the victim was
> a public officer; 3) that the victim was discharging or attempting
> to discharge a duty of his office; 4) that the defendant resisted,
> delayed, or obstructed the [officer] in discharging or attempting
> to discharge a duty of his office; and 5) that the defendant
> acted willfully and unlawfully, that is intentionally and without
> justification or excuse.

***State v. Dammons***, **159 N.C. App. 284, 294, 583 S.E.2d 606, 612 (2003).**

In the instant case, Defendant claims that he was within his rights when he

initially refused to give his name and contact information to the officer who

was issuing a citation.  By implication, therefore, he claims there was no

evidence of the fourth element – resisting, delaying, or obstructing the

officer in discharging a duty of his office.  Defendant's argument, however,

overlooks the fact that his refusal to give his name was hardly the only

instance of his obstructive activities.  The undisputed evidence showed

that he also tried to distract the officers, incite the partygoers to resist, and

prevent the officers from moving the party off the road.  This evidence

provides more than adequate support for the fourth element of a § 14-223

offense.  The Court, therefore, upholds Defendant's conviction based on this statute.

As to Defendant's conviction for public intoxication, the relevant statute provides: "It shall be unlawful for any person in a public place to be intoxicated and disruptive in any of the following ways:  (1) Blocking or otherwise interfering with traffic on a highway or public vehicular area[.]" **N.C. Gen. Stat. § 14-444.**  An accompanying statute defines "intoxicated" as "the condition of a person whose mental or physical functioning is presently substantially impaired as a result of the use of alcohol." **N.C. Gen. Stat. § 14-443(2).**  Defendant argues that the Government failed to present sufficient evidence of his intoxicated state, because there was no "administration of a mechanical or chemical test" to measure his blood alcohol content.  Without such a test, Defendant claims, any public intoxication conviction must necessarily be based on speculation.

The Court disagrees.  Defendant admitted at trial that he was drinking his eighth beer of the evening when the officers arrived. **Transcript, *supra*, at 48.**  Furthermore, in response to a question about Defendant's degree of impairment, Officer Rickett stated:

> Well, he actually admitted to being drunk.  I asked anybody
> there if they were sober enough to move the vehicle; they all

admitted that they had been drinking.  He was obviously impaired from his – he fell against the truck there one time while I was trying to talk to him.  When I handcuffed him and tried to set him on the ground, he fell over and rolled onto his side; just obvious signs of impairment.

*Id.* **at 16-17.**  When asked a similar question, Officer Lovin stated:

He had a strong odor of alcoholic beverage on his person, he had redness of eyes, he was very obnoxious and I thought probably talked too much for somebody that wasn't impaired; he would not follow my instructions to exit the roadway; he was very combative in his language and his demeanor towards us, and just, overall – his unsteadiness. . . .  After Officer Ricketts [sic] set him down [after handcuffing him], he proceeded to fall and roll down the embankment probably eight or ten feet.  All these together showed a degree of impairment, I think.

*Id.* **at 35.**  In light of this overwhelming and uncontroverted evidence of Defendant's intoxication, the Court does not believe that medical analysis of Defendant's breath or blood was necessary to establish his impaired state at the time of his citation.  As Defendant has cited no case or statutory law to indicate that such medical analysis is required before a court may convict a defendant of public intoxication under § 14-444, the Court upholds Defendant's conviction for this offense.

## C. Conviction Under N.C. Gen. Stat. § 14-197

Defendant was also convicted of violating N.C. Gen. Stat. § 14-197, which provides:

> If any person shall, on any public road or highway and in the hearing of two or more persons, in a loud and boisterous manner, use indecent or profane language, he shall be guilty of a Class 3 misdemeanor. The following counties shall be exempt from the provisions of this section: Pitt and Swain.

Defendant first argues that he was erroneously convicted under this statute because it is facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution. The First Amendment provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech." **U.S. Const. amend. I.** "It has long been established that" First Amendment rights "are protected by the Fourteenth Amendment from invasion by the States." ***Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).** Here, Plaintiff alleges that North Carolina violated his First Amendment right of free speech by enacting a statute that is both vague and overbroad. He also argues that, even if the statute is not facially unconstitutional, it is nonetheless unconstitutional as applied to his particular circumstances.

13

The Court begins by addressing Defendant's facial[4] challenges to the statute.  **Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983) ("[W]hen overbreadth or vagueness challenges to a law are made, those challenges usually should be resolved before the validity of the law as applied is addressed").**  The procedure for analyzing a facial challenge to a statute's constitutionality, based on overbreadth and vagueness, is well established:  "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.  If it does not, then the overbreadth challenge must fail."  **Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982) (footnote omitted); see also Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1081 (4th Cir. 2006) ("[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications . . . ." (alteration in original) (internal quotation marks omitted)).**  The Supreme Court has cautioned that the overbreadth doctrine "is, manifestly, strong medicine" and should be used

---

[4] A "facial" challenge, in this context, means a claim that the law is "invalid *in toto* – and therefore incapable of any valid application[.]" **Steffel v. Thompson, 415 U.S. 452, 474 (1974).**

"sparingly and only as a last resort." *Broadrick v. Oklahoma*, **413 U.S. 601, 613 (1973).**   A court should invoke a "limiting construction" or employ "partial invalidation" before resorting to a finding of facial overbreadth. *Id.*

Once the Court has evaluated the statute for facial overbreadth, "[t]he court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Hoffman Estates*, *supra*, **at 494-95.**  "A statute is impermissibly vague if it either (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Giovani Carandola, supra*, **at 1079 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).**

In conducting this analysis, the Court must also keep in mind certain guiding principles.  "In the First Amendment context, '[c]riminal statutes must be scrutinized with particular care; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application.'" *R.A.V. v. City of St. Paul, Minn.*, **505 U.S. 377, 414 (1992) (alteration in original)**

(quoting *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).   At the same time, however, it is well-settled that "[s]tatutes are presumed constitutional[.]"  *E.g., Bush v. Vera*, 517 U.S. 952, 992 (1996) (O'Connor, J., concurring).   Also, "where a statute is 'reasonably susceptible of two interpretations,' the courts will choose the one that steers clear of collision with constitutional limitations."  *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 177 (1974) (*quoting United States ex rel. Attorney General v. Del. & Hudson Co.*, 213 U.S. 366, 407 (1909)); *see also Texas v. E. Tex. R. Co.*, 258 U.S. 204, 217 (1922) (noting that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter" (citation omitted)).   This "principle is applied so as to preserve substantially the legislative purpose, even where a statute must be tailored to avoid a question of constitutional infirmity."  *Blanchette, supra*.

Finally, once the Court has conducted a facial analysis of the statute based on overbreadth and vagueness, it must turn to Defendant's argument that the challenged statute is unconstitutional as applied to him. An "as- applied" challenge differs from a facial challenge in that it looks to

the constitutionality of the statute or regulation as it is applied to a particular set of circumstances. ***Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997)**. In addition, the remedy is very different: "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances[,] . . . but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." ***Id.***

### 1. Overbreadth

According to this carefully designed theoretical framework, the Court's first task is to "determine whether [§ 14-197] reaches a substantial amount of constitutionally protected conduct." ***Hoffman Estates, supra*, at 494.** The statute should be invalidated on overbreadth grounds "if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" ***City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick*, 413 U.S. at 612-15).**

Here, Defendant and *amicus* argue that § 14-197 "is so broad that it applies to countless activities that occur in the State of North Carolina

every day. . . .  The majority of these activities, despite falling within the statute's plain terms, would not be viewed as criminal acts by members of society generally."  **ACLU Brief,** *supra,* **at 9.**  "For instance, the statute could arguably apply to a driver who curses after being cut off by another car, if two or more passengers are accompanying the driver."  *Id.*

The State does not appear to contest this point, but rather urges the Court to adopt a limiting construction of the statute, so as to eliminate any constitutional deficiency.  **North Carolina Brief,** *supra,* **at 8.**  Specifically, North Carolina argues the Court should interpret § 14-197's prohibition on "indecent or profane language" to reach only instances where a defendant has used so-called "fighting words."  *Id.* **at 12.**

"Fighting words" are those "which by their very utterance inflict injury or tend to incite an immediate breach of the peace."  ***Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942).**  They are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction."  ***Cohen v. California,* 403 U.S. 15, 20 (1971) (citing *Chaplinsky,* *supra*).**

Fighting words are not protected speech for purposes of the First Amendment.  Indeed, as the Supreme Court stated in *Chaplinsky*, "[r]esort

to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." ***Chaplinsky*, 315 U.S. at 572 (citation omitted).** More recently, the Supreme Court has observed that "'the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" ***Virginia v. Black*, 538 U.S. 343, 359 (2003) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).**

The undersigned agrees with North Carolina that, in this case, a limiting construction that incorporates the concept of "fighting words" is an appropriate device for eliminating the potential overbreadth of § 14-197. While the Court will not rewrite a statute in order to bring it into conformity with the Constitution, "[o]n a facial challenge [to a statute], [the Court] must apply a reasonable limiting construction where one is available." ***Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988); *Giovani Carandola*, *supra*, at 1084.** Construing § 14-197's prohibition on "indecent or profane language" to reach only "fighting words" seems to this

Court to be a reasonable interpretation of the statute.  In the absence of any guidance from North Carolina state courts on this issue, this Court adopts the proposed limiting instruction.  ***See Dimmit v. City of Clearwater***, **985 F.2d 1565, 1572 (11th Cir. 1993) (holding that "[a] facial challenge may be defeated if the statute in question is readily susceptible to a narrowed construction that is constitutional");** ***Hartford Fire. Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy***, **740 F.2d 1362, 1366 (6th Cir. 1984) (noting that "state legislatures are presumed by federal courts to have acted constitutionally in making laws").**

When § 14-196 is construed to prohibit fighting words that are used "on any public road or highway and in the hearing of two or more persons, in a loud and boisterous manner," the statute loses any potential for facial overbreadth.  Since fighting words are not protected speech, the statute, thus construed, does not prohibit "a substantial amount of constitutionally protected conduct."  ***Hoffman Estates,*** **455 U.S. at 494.**

**2. Vagueness**

The Court next turns to Defendant's facial challenge based on what he alleges is § 14-196's vagueness.  A statute "is unconstitutionally vague to the extent that it fails to give adequate warning of the boundary between the constitutionally permissible and constitutionally impermissible applications of the statute." ***Morales*, 527 U.S. at 59 n.30 (quoting *Wright v. Georgia*, 373 U.S. 284, 292 (1963)).**  The Court can "uphold the challenge only if the enactment is impermissibly vague in all of its applications." ***Hoffman Estates,* 455 U.S. at 494.**   That is, if the statutory language "clearly and precisely delineates its reach in words of common understanding," it is not void on its face for vagueness.  ***Cameron v. Johnson*, 390 U.S. 611, 616 (1968).**

According to the statute's plain language, the crime proscribed by § 14-196 has four elements:  (1) use of  indecent or profane language, (2) on any public road or highway, (3) in the hearing of two or more persons, (4) in a loud and boisterous manner.  **N.C. Gen. Stat. § 14-196.**  As to the first element, the Court will employ the limiting construction described above and assume that this element delineates fighting words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

***Chaplinsky*, *supra*.**  A prohibition on "fighting words" does not fail for facial

vagueness.  ***Id.* at 573-74 (stating that a statute prohibiting "the use in**

**a public place of words likely to cause a breach of the peace[,] . . . .**

**[which is] carefully drawn so as not unduly to impair liberty of**

**expression, is not too vague for a criminal law"); *Fox v. Washington*,**

**236 U.S. 273, 277 (1915) (in a case involving a statute that was**

**construed as a prohibition on "encouraging an actual breach of law,"**

**invalidating an argument that the statute "is both an unjustifiable**

**restriction of liberty and too vague for a criminal law").**

As to the second, third, and fourth elements, Defendant has offered

no argument as to how they fail to "clearly and precisely delineate[ ] [their]

reach in words of common understanding," and this Court has discerned

no such deficiency.  ***See Cameron*, *supra*; *cf. Jim Crockett Promotion,***

***Inc. v. City of Charlotte*, 706 F.2d 486, 489 n.3 (4th Cir. 1983)**

**(describing cases in which similar phrases such as "unreasonably**

**loud" and "disturbing" passed constitutional muster based on a**

**vagueness analysis).**  Accordingly, the Court concludes that the statute

should survive Defendant's facial challenge on the basis of vagueness.

### 3. "As Applied" Analysis

Finally, Defendant and *amicus* argue that, even if § 14-197 is not facially invalid, it is unconstitutional as applied to Defendant. Thus, the issue presented is whether Defendant enjoys a First Amendment right to confront police officers in the routine performance of their duties with epithets such as "f*** dickhead" and "f***ing assholes" in an attempt to incite an intoxicated crowd to retaliation. In the opinion of the undersigned, Defendant manifestly does not.

Road and streets "'are natural and proper places for the dissemination of information and opinion.'" ***Flower v. United States*, 407 U.S. 197, 198 (1972) (quoting *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939)).** As such, a person "'who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion.'" ***Id.* at 198-99 (quoting *Jamison v. Texas*, 318 U.S. 413, 416 (1943)).** While it is true that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," such speech is not protected against censorship or punishment if it is "'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public

inconvenience, annoyance, or unrest.'" *Hill*, **482 U.S. at 461 (quoting**

***Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)).**

Here, Defendant was far from "orderly" in his expression of his views;

indeed, he received a citation for being drunk and *dis*orderly as a result of

his conduct. ***Flower*, 407 U.S. at 199.** More seriously, he was one of a

large group of intoxicated individuals who confronted two lone police

officers in the middle of the night in a relatively deserted area. The officers

testified repeatedly that Defendant's targeted profanity and aggressive

demeanor appeared calculated to incite the other partygoers against the

officers. Indeed, the evidence showed that Defendant only began backing

off from his combative behavior when his friends persuaded him to

cooperate. Had cooler heads not prevailed in the altercation, the situation

could have escalated rapidly, with tragic consequences – particularly if

weapons had become involved. In this Court's view, such large-scale

confrontation appears to be precisely the type of harm that § 14-197 was

designed to prevent. Such a conflict is a "substantive evil" that rises above

"public inconvenience, annoyance, or unrest." ***Hill, supra.*** Further, given

the lateness of the hour, the intoxication of the party guests, and the fact

the police were outnumbered at least six to one, it is evident that

Defendant's words and conduct created a "clear and present danger" of inciting such a conflict. *Id.* Accordingly, the Court concludes that § 14-197 is not unconstitutional as applied to Defendant in these particular circumstances.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's convictions for using profane or indecent language on a public highway pursuant to N.C. Gen. Stat. § 14-197; resisting, obstructing, or delaying an officer under N.C. Gen. Stat. § 14-223; and public intoxication under N.C. Gen. Stat. § 14-444(a) are hereby **AFFIRMED**.

Signed: November 8, 2007

Lacy H. Thornburg
United States District Judge